UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMY LEDESMA, | ) | No. EDCV 08-1135-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Amy Ledesma filed a complaint on September 3, 2008, seeking review of the Commissioner's decision denying her application for disability benefits.  On February 17, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on April 15, 2009.

**BACKGROUND**

**I**

On August 25, 2006 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program

of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since March 3, 2006, due to bipolar disorder.  Certified Administrative Record ("A.R.") 8, 90.  The plaintiff's application was initially denied on February 20, 2007, and, following reconsideration, was denied again on August 20, 2007.  A.R. 8.  The plaintiff then requested an administrative hearing, which was held on March 6, 2008, before Administrative Law Judge Mason D. Harrell, Jr. ("the ALJ"). A.R. 16-44.  On April 4, 2008, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 6-15.  The plaintiff appealed this decision to the Appeals Council, which denied review on July 3, 2008. A.R. 1-3.

## II

The plaintiff, who was born on July 22, 1968, is currently 41 years old.  A.R. 14, 99, 122.  She has a 12th-grade education with one year of business college, and previously worked as a receptionist and as a waitress.  A.R. 26, 91, 93, 120.

Plaintiff was treated at the Riverside County Department of Mental Health ("RCDMH") from February 1, 2006, to February 13, 2008. A.R. 150-208, 233-38.  Her primary treating physician was Bruce Bogost, M.D.,[1] A.R. 150-51, 154, 178, 182, 185, 188, 196, 203, 206-07,

---

[1]  Dr. Bogost was a treating physician, although plaintiff refers to him as a "consultative examiner."  Jt. Stip. at 12:12-13.  See, e.g., Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (physician who saw claimant five times in three years for treatment was treating physician); Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (physician who saw claimant twice within 14 months and prescribed medication was treating physician).

1   who diagnosed plaintiff as having bipolar II disorder and

2   polysubstance dependence.  <u>See</u> A.R. 150-51, 182, 196.  Dr. Bogost and

3   others prescribed several medications to plaintiff, including Zoloft,[2]

4   Depakote,[3] and Seroquel.[4]  A.R. 150-51, 153, 178, 203, 206, 236.  On

5   September 28, 2006, Dr. Bogost opined plaintiff:  was paranoid and

6   suffered from delusions; had a "mild" impairment of her memory and

7   judgment; showed evidence of insomnia, depression and anxiety; was

8   unable to maintain a sustained level of concentration, perform

9   repetitive tasks for an extended period, or adapt to new or stressful

10  situations; could not interact appropriately with strangers, co-

11  workers or supervisors; was fearful and anxious; and needed assistance

12  in keeping appointments.  A.R. 151.  Dr. Bogost further opined

13  plaintiff could not complete a 40-hour work week without decompensat-

14  ing, and her prognosis was guarded.  <u>Id.</u>

15

16      On September 4, 2006, Eugene Hu, M.D., an attending physician at

17  Riverside County Regional Medical Center, noted plaintiff appeared to

18  be using cocaine, amphetamine and heroin, and cleared plaintiff for

19  entry into a "detox" program.  A.R. 122-23.  J. Robinson, L.V.N.,

20

21      [2]  Zoloft, also called Sertraline, "is prescribed for major
22  depression — a persistently low mood that interferes with
    everyday living."  <u>The PDR Family Guide to Prescription Drugs</u> at
23  612, 763 (8th ed. 2000).

24      [3]  Among other uses, "Depakote . . . [is] used to control
25  the manic episodes — periods of abnormally high spirits and
    energy — that occur in bipolar disorder (manic depression)."  <u>Id.</u>
26  at 194.

27      [4]  "Seroquel combats the symptoms of schizophrenia, a mental
    disorder marked by delusions, hallucinations, disrupted thinking,
28  and loss of contact with reality."  <u>Id.</u> at 610.

noted plaintiff was on Methadone, was "shaky," and admitted using

heroin the day before and showed "numerous scarred tract & prior

abscess looking sites on [her] body."  A.R. 124, 126.


On February 10, 2007, psychiatrist Romualdo R. Rodriguez, M.D.,

examined plaintiff, A.R. 127-35, and noted she was not under the

influence of drugs at the time.  A.R. 130.  Dr. Rodriguez found

plaintiff:  had "coherent and organized" though processes and was not

delusional; had "no current suicidal, homicidal or paranoid ideation";

described "her mood as euthymic"; was "polite, serious and relaxed"

and not "tearful"; although feeling "helplessness and hopelessness at

times, [plaintiff does] not [feel] worthless and guilty"; was "alert

and oriented . . . [and] appears to be of at least average

intelligence"; "could recall three items immediately and two items

after five minutes"; "could perform serial threes [and] . . . can

correctly and quickly complete simple mathematic problems"; and "was

able to follow . . . conversation well."  A.R. 130-31.  Nevertheless,

Dr. Rodriguez found plaintiff's "[i]nsight into her problems is very

problematic," and determined plaintiff was "still actively using drugs

illegally and not getting proper care for her mental health issues."

A.R. 132.  Dr. Rodriguez diagnosed plaintiff with:  post-traumatic

stress disorder, attention deficit hyperactivity disorder (ADHD) and

polysubstance dependence, and he determined her Global Assessment of

Functioning (GAF) was 60.[5]  Id.  Dr. Rodriguez opined that, "if

---

[5]   A GAF of 60 indicates "[m]oderate symptoms (e.g., flat
affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or
coworkers)."  American Psychiatric Association, Diagnostic and

[plaintiff] stopped all illegal drugs and [was] properly treated for ADHD and/or any other mood disorders she may have, she could easily recover from her problems within twelve months."  A.R. 133.  Dr. Rodriguez found plaintiff was:  (1) "[a]ble to understand, remember and carry out <u>simple</u> one or two step job instructions"; (2) "[a]ble to do detailed and <u>complex</u> instructions"; (3) "[s]lightly limited in her ability to relate and interact with supervisors, coworkers and the public"; (4) "[m]oderately limited in her ability to maintain concentration and attention, persistence and pace"; (5) "[s]lightly limited in her ability to associate with day-to-day work activity, including attendance and safety"; (6) "[s]lightly limited in her ability to adapt to the stresses common to a normal work environment"; (7) "[s]lightly limited in her ability to maintain regular attendance in the work place and perform work activities on a consistent basis"; and (8) "[s]lightly limited in her ability to perform work activities without special or additional supervision."  A.R. 133-34.

    On February 15, 2007, nonexamining psychiatrist Barbara A. Smith, M.D., opined plaintiff suffers from an affective disorder and a polysubstance dependence, and determined plaintiff's impairments were not severe.  A.R. 136-46.  Dr. Smith opined plaintiff has: (1) "mild" restriction of activities of daily living; (2) "marked" difficulties in maintaining social functioning; (3) "marked" difficulties in maintaining concentration, persistence or pace; and (4) three episodes of decompensation, each of extended duration.  A.R. 144.  Dr. Smith found plaintiff's drug abuse and alcoholism were material and without

_Statistical Manual of Mental Disorders_, 34 (4th ed. (Text Revision) 2000).

those conditions, plaintiff's "impairment [would] not [be] severe[,]" and plaintiff would have no restriction in activities of daily living, no difficulties in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  A.R. 144, 146.

On May 3, 2007, Dr. Bogost, who had not seen plaintiff since December 7, 2006, opined plaintiff:  showed no signs of psychosis and her memory was intact; had mildly impaired judgment; showed evidence of confusion, depression and anxiety and showed negative symptoms for apathy; could maintain a sustained level of concentration, but could not adapt to new or stressful situations; could not interact appropriately with family, strangers, co-workers or supervisors; was hostile, fearful and anxious; and needed assistance in keeping appointments.  A.R. 150.  Dr. Bogost again opined plaintiff could not complete a 40-hour work week without decompensating, and that her prognosis was guarded.  Id.

On February 13, 2008, an unidentified physician at RCDMH diagnosed plaintiff as having an unspecified mood disorder and heroin and methamphetamine dependence.  A.R. 238.  He/she opined that plaintiff:  showed evidence of insomnia, depression, anxiety and compulsive behaviors, as well as impaired judgment and concrete thought patterns; showed no ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or adapt to new or stressful situations; showed no ability to interact appropriately with family, strangers, co-workers or supervisors; needed assistance with hygiene, and was unable to manage funds in her

1    best interest; "missed her appointments and has refused to go for lab

2    work," and her prognosis was "chronic."   Id.

3

4        Medical expert Joseph M. Malancharuvil, Ph.D., testified at the

5    administrative hearing that plaintiff has a mixed substance abuse

6    disorder, an organic affective disorder with bipolar features

7    secondary to substance abuse, and a personality disorder, not

8    otherwise specified.  A.R. 26-36.  Dr. Malancharuvil opined that her

9    mental limitations would be "marked" if she's intoxicated, but, if not

10   abusing drugs, she would have only a "mild" limitation in her

11   activities of daily living, "mild" difficulty maintaining social

12   functioning, "mild-to-moderate" difficulties maintaining

13   concentration, persistence or pace, and no episodes of decompensation.

14   A.R. 28-29.  Dr. Malancharuvil further opined plaintiff is restricted

15   to simple work, up to four to five-step instructions with no excessive

16   speed requirements, and she should not be involved in safety

17   operations or operate hazardous machinery.  A.R. 29-31.

18

19                              **DISCUSSION**

20                                 **III**

21       This Court, pursuant to 42 U.S.C. § 405(g), has the authority to

22   review the Commissioner's decision denying plaintiff disability

23   benefits to determine if his findings are supported by substantial

24   evidence and whether the Commissioner used the proper legal standards

25   in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th

26   Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

27   "In determining whether the Commissioner's findings are supported by

28   substantial evidence, [this Court] must review the administrative

record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1205 (9th Cir. 2008) (quoting Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008)); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) ("To establish eligibility for Social Security benefits, a claimant has the burden to prove he is disabled.").

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in

substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).
If not, in the **Second Step**, the ALJ must determine whether the
claimant has a severe impairment or combination of impairments
significantly limiting her from performing basic work activities.  20
C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ
must determine whether the claimant has an impairment or combination
of impairments that meets or equals the requirements of the Listing of
Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20
C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the
ALJ must determine whether the claimant has sufficient residual
functional capacity despite the impairment or various limitations to
perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not,
in **Step Five**, the burden shifts to the Commissioner to show the
claimant can perform other work that exists in significant numbers in
the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).
Moreover, where there is evidence of a mental impairment that may
prevent a claimant from working, the Commissioner has supplemented the
five-step sequential evaluation process with additional regulations
addressing mental impairments.[6]  Maier v. Comm'r of the Soc. Sec.

_____

[6]  First, the ALJ must determine the presence or absence of
certain medical findings relevant to the ability to work.  20
C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the
claimant establishes these medical findings, the ALJ must rate
the degree of functional loss resulting from the impairment by
considering four areas of function: (a) activities of daily
living; (b) social functioning; (c) concentration, persistence,
or pace; and (d) episodes of decompensation.  20 C.F.R. §§
404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the
degree of loss, the ALJ must determine whether the claimant has a
severe mental impairment.  20 C.F.R. §§ 404.1520a(d),
416.920a(d).  Fourth, when a mental impairment is found to be
severe, the ALJ must determine if it meets or equals a Listing.
20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a

1 | <u>Admin.</u>, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

2

3 | However, "[a] finding of 'disabled' under the five-step inquiry

4 | does not automatically qualify a claimant for disability benefits."

5 | <u>Bustamante v. Massanari</u>, 262 F.3d 949, 954 (9th Cir. 2001); <u>Parra</u>, 481

6 | F.3d at 746.  Rather, the Act provides that "[a]n individual shall not

7 | be considered disabled . . . if alcoholism or drug addiction would

8 | . . . be a contributing factor material to the Commissioner's

9 | determination that the individual is disabled."  42 U.S.C. §

10 | 423(d)(2)(C).

11

12 | For claimants such as plaintiff, who have substance abuse

13 | dependency, the ALJ "must first conduct the five-step inquiry without

14 | separating out the impact of alcoholism or drug addiction.  If the ALJ

15 | finds that the claimant is not disabled under the five-step inquiry,

16 | then the claimant is not entitled to benefits and there is no need to

17 | proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935."

18 | <u>Bustamante</u>, 262 F.3d at 955 (citations omitted); <u>see also</u> <u>Brueggemann</u>

19 | <u>v. Barnhart</u>, 348 F.3d 689, 694 (8th Cir. 2003) ("The plain text of the

20 | relevant regulation requires the ALJ first to determine whether [the

21 | claimant] is disabled . . . without segregating out any effects that

22 | might be due to substance use disorders. . . ." (citations and

23 | footnote omitted)); <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1214 (10th

24

25 | Listing is not met, the ALJ must then perform a residual
26 | functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding
27 | plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas
28 | described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Cir. 2001) ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C).  The [ALJ] must first make a determination that the claimant is disabled." (citation omitted)).  Then the ALJ "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."[7]  20 C.F.R. §§ 404.1535(a), 416.935(a); see also Brueggemann, 348 F.3d at 694-95 ("If the gross total of a claimant's limitations, including the effect of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."); Drapeau, 255 F.3d at 1214 ("[The ALJ] must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol [or drugs].").

        Applying the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (Step One).  The ALJ then found plaintiff has the following "severe combinations of impairments: mixed substance addiction disorder, substance induced organic affective disorder with bipolar features, generalized anxiety disorder, and personality disorder, not otherwise specified"; however, plaintiff does not have a severe physical impairment.  (Step Two).

---

        [7]  "The 'key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if [he] stopped using alcohol or drugs."  Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998) (citation omitted); 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

The ALJ then found plaintiff's "impairments, including the substance use disorders," meet the requirements of Listing nos. 12.02, 12.06, 12.08 and 12.09. (Step Three). Having concluded plaintiff is disabled when her substance abuse is considered, the ALJ next addressed whether plaintiff's substance abuse is a contributing factor material to the disability determination. The ALJ found that if plaintiff stopped her substance abuse, she would continue to have a severe impairment or combination of impairments (Step Two); however, she would not have an impairment or combination of impairments that meets or equals a listed impairment. (Step Three). The ALJ then concluded that even if plaintiff stopped her substance abuse, she would be unable to perform her past relevant work. (Step Four). Finally, the ALJ determined that if plaintiff stopped her substance abuse, there are a significant number of jobs in the national economy she can perform; therefore, she is not disabled. (Step Five).

**IV**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine, 574 F.3d at 689 (The RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). Here, the ALJ found that if plaintiff "stopped the substance use," she would retain the following RFC:

    to perform light work[8] . . . except work involving more than

_____

    [8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to

1    simple tasks, i.e., more than four to five steps of instructions,

2    any rapid, assembly-line-type work, any significant

3    responsibility for the safety of others, or any significant

4    hypervigilance.

5

6    A.R. 12 (footnote added).  However, plaintiff contends the RFC finding

7    is not supported by substantial evidence because:  (1) the ALJ failed

8    to properly consider the opinions of treating physician Dr. Bogost and

9    consulting physician Dr. Rodriguez; (2) erroneously concluded

10   plaintiff is not a credible witness; and (3) failed to fully and

11   fairly develop the record.  There is no merit to these contentions.

12

13       **A.   Physicians' Opinion Evidence:**

14       The medical opinions of treating physicians are entitled to

15   special weight because the treating physician "is employed to cure and

16   has a greater opportunity to know and observe the patient as an

17   individual."  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987);

18   <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir.

19   1999).  Therefore, the ALJ must provide clear and convincing reasons

20   for rejecting the uncontroverted opinions of a treating physician,

21   <u>Ryan</u>, 528 F.3d at 1198, and "[e]ven if [a] treating doctor's opinion

22   is contradicted by another doctor, the ALJ may not reject this opinion

23   without providing 'specific and legitimate reasons' supported by

24   _____

25   10 pounds.  Even though the weight lifted may be very little, a
     job is in this category when it requires a good deal of walking

26   or standing, or when it involves sitting most of the time with
     some pushing and pulling of arm or leg controls.  To be

27   considered capable of performing a full or wide range of light
     work, you must have the ability to do substantially all of these

28   activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

substantial evidence in the record." <u>Reddick</u>, 157 F.3d at 725;

<u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008).  Similarly,

the ALJ "must provide 'clear and convincing' reasons for rejecting the

uncontradicted opinion of an examining physician[,]" <u>Lester v. Chater</u>,

81 F.3d 821, 830 (9th Cir. 1995); <u>Widmark v. Barnhart</u>, 454 F.3d 1063,

1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor,

the opinion of an examining doctor can be rejected only for specific

and legitimate reasons that are supported by substantial evidence in

the record." <u>Regennitter v. Comm'r of the Soc. Sec. Admin.</u>, 166 F.3d

1294, 1298-99 (9th Cir. 1999); <u>Ryan</u>, 528 F.3d at 1198.


**B.   Dr. Bogost:**

     Dr. Bogost diagnosed plaintiff with bipolar II disorder and

polysubstance dependence and made various findings regarding

plaintiff's mental condition in two written reports dated

September 28, 2006, and May 3, 2007.  The plaintiff contends the ALJ

improperly rejected Dr. Bogost's opinion in concluding plaintiff would

not be disabled if she stopped her substance abuse.  The plaintiff is

mistaken.


     Dr. Bogost found plaintiff could not work given her bipolar

disorder and polysubstance abuse.  A.R. 150-51.  The ALJ agreed with

this conclusion, finding plaintiff is disabled when she is abusing

drugs.  A.R. 11.  However, as the ALJ noted, Dr. Bogost did not

consider, or have any opinion about, what mental limitations plaintiff

would have if she stopped abusing drugs,[9] stating:

---

     [9]  The record indicates plaintiff was abusing drugs
throughout her treatment at RCDMH.  <u>See</u>, e.g., A.R. 158, 163,

1        The fact that [Dr. Bogost] . . . has indicated the

2        [plaintiff] cannot perform any work because of a combination

3        of affective, substance dependence, and personality

4        disorders is not material at this point in the sequential

5        evaluation process since it does not address the issue of

6        whether the [plaintiff] would still be disabled if she were

7        not actively abusing drugs and further inquiry would yield

8        no significant findings since the treating source has

9        indicated that the [plaintiff's] limitations are mild in

10        terms of memory and judgment when sober, that she has no

11        problems in terms of social withdrawal, and that she is

12        simply apathetic[,] which is consistent with the findings of

13        polysubstance dependence.  This is also consistent with [Dr.

14        Rodriguez's] findings . . . and fully consistent with the

15        medical expert's findings at the hearing regarding the

16        severity of the [plaintiff's] mental impairment if she were

17        to stop abusing drugs.

18

19 A.R. 13.  In other words, contrary to plaintiff's contention, the ALJ

20 did not ignore Dr. Bogost's opinion.  Rather, the ALJ agreed with Dr.

21 Bogost's opinion to the extent it addressed plaintiff's ability to

22 work while she continued to abuse drugs, see Valentine, 574 F.3d at

23 691-92 (no error when ALJ considered physician's evidence claimant

24 contends ALJ ignored), and only "rejected" Dr. Bogost's opinion to the

25 extent it failed to consider the pertinent issue before the ALJ –

26 whether plaintiff would remain disabled if she stopped abusing drugs.

27

28 175, 181, 201.

A.R. 13.   To address that question, the ALJ relied on the two physicians who considered the issue – examining physician Dr. Rodriguez and medical expert Dr. Malancharuvil – and these physicians' findings constitute substantial evidence to support the ALJ's RFC assessment.   See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), cert. denied, 519 U.S. 1113 (1997).   Thus, the ALJ did not err, and there is no merit to plaintiff's claim.   Valentine, 574 F.3d at 691-92.


        **C.   Dr. Rodriguez:**

        On February 10, 2007, when Dr. Rodriguez conducted a complete psychiatric examination of plaintiff, she was sober and not under the influence of drugs; however, Dr. Rodriguez determined plaintiff "is still actively using drugs illegally. . . ."  A.R. 130.  Based on his examination, Dr. Rodriguez determined plaintiff was:  able to "understand, remember and carry out simple one or two-step instructions"; able "to do detailed and complex instructions"; "[s]lightly limited" in her abilities to relate and interact with supervisors, coworkers and the public, to associate with day-to-day work activity, to adapt to the stresses common to a normal work environment, to maintain regular attendance in the work place and perform work activities on a consistent basis, and to perform work activities without special or additional supervision; and

"[m]oderately limited in her ability to maintain concentration and attention, persistence and pace." A.R. 133-34. Dr. Rodriguez also opined that if plaintiff "stopped using all illegal drugs and [was] properly treated . . . , she could easily recover from her problems within twelve months." A.R. 133.

The plaintiff contends that the ALJ failed to consider Dr. Rodriguez's opinion that plaintiff is "moderately" limited in her ability to "maintain concentration and attention, persistence and pace[,]" and, thus, failed to provide a "legally sufficient reason" for rejecting this finding. Jt. Stip. at 3:6-4:11. The plaintiff is mistaken. The ALJ did not "reject" any of Dr. Rodriguez's findings and, in fact, adopted Dr. Rodriguez's findings, specifically holding that "[w]ith regard to maintaining concentration, persistence or pace, the [plaintiff] would have marginally moderate difficulties if the substance use was stopped."[10] A.R. 12. Thus, the ALJ did not err, and there is no merit to plaintiff's claim. <u>Valentine</u>, 574 F.3d at 691-92.

//

//

---

[10] Moreover, although Dr. Rodriguez opined plaintiff is "moderately" limited in her ability to maintain concentration, persistence and pace, he also found plaintiff's difficulties in this regard do not prevent her from being able to perform even detailed and complex instructions. A.R. 133. The ALJ's RFC assessment, which limited plaintiff to light "work involving . . . simple tasks, i.e., [no] more than four to five steps of instructions, [no] rapid, assembly-line-type work, [no] significant responsibility for the safety of others, [and no] significant hypervigilance[,]" A.R. 12, appropriately synthesized the limitations Dr. Rodriguez found.

**D.  Plaintiff's Credibility:**

Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional limitations,[11] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's subjective complaints are not credible, he "'must provide specific, cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007).  Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Morgan, 169 F.3d at 599; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008).

The plaintiff contends the ALJ improperly discounted her credibility.  There is no merit to this claim.  Indeed, as the Commissioner argues, plaintiff's claim is a red herring.  At the administrative hearing, plaintiff did not specifically testify about any mental limitations she experiences absent her substance abuse, but instead stated only that she cannot work due to "mental problems,"

---

[11] "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

which led to a psychiatrist taking her "out of work" in 2006.[12]  A.R.
19.  By mental problems, plaintiff explained that she meant her
"ability to remember things" and "[t]o focus."[13]  A.R. 20.  The ALJ,
however, did not reject plaintiff's testimony.  To the contrary, in
finding plaintiff disabled when her substance abuse is considered, the
ALJ found plaintiff "credible concerning her alleged symptoms and
limitations because there is no credible evidence she has ever stopped
using drugs[,]" A.R. 11, and this finding is supported by substantial
evidence in the record demonstrating plaintiff continues to abuse
drugs.[14]  See, e.g., A.R. 23-24, 38, 122-23, 162, 170, 195.  There-
fore, the ALJ did not improperly discredit plaintiff.  Parra, 481 F.3d
at 750-51.


        **E.    Duty To Develop The Record:**

        "'In Social Security cases, the ALJ has a special duty to fully
and fairly develop the record and to assure that the claimant's

---

        [12]  The plaintiff did cursorily state drugs are not her main
problem, and she has not been using any more, having last taken
methamphetamine in September or October of 2007 and marijuana
"not too long ago."  A.R. 23-24, 38-39.

        [13]  The plaintiff also testified she had blackouts, she is
anemic, and she has headaches, ringing in her ears, back
problems, stomach problems, gallbladder problems and ulcers;
however, she did not state these problems prevent her from
working.  A.R. 21-22, 41.

        [14]  The ALJ also found that plaintiff's "statements
concerning the intensity, persistence and limiting effects of
[her] symptoms are not credible to the extent they are consistent
with the [RFC] assessment" because most of plaintiff's symptoms
are "explainable by her drug abuse[,]" A.R. 13, and, as discussed
throughout this opinion, plaintiff's drug abuse is not a basis
for finding plaintiff disabled.

interests are considered.'"  <u>Smolen</u>, 80 F.3d at 1288 (citation

omitted); <u>Widmark</u>, 454 F.3d at 1068.  This duty exists regardless of

whether the claimant is represented by counsel, <u>Celaya v. Halter</u>, 332

F.3d 1177, 1183 (9th Cir. 2003); <u>Tonapetyan</u>, 242 F.3d at 1150, and is

"heightened where the claimant may be mentally ill and thus unable to

protect her own interests." <u>Tonapetyan</u>, 242 F.3d at 1150.  However,

only "[a]mbiguous evidence, or the ALJ's own finding that the record

is inadequate to allow for proper evaluation of the evidence, triggers

the ALJ's duty to 'conduct an appropriate inquiry.'" <u>Id.</u> (citations

omitted); <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005).


Here, the ALJ referred plaintiff for examinations by a

psychiatrist, Dr. Rodriguez, and an orthopedic surgeon, William C.

Boeck, Jr., M.D., A.R. 209-14, and also obtained a medical expert, Dr.

Malancharuvil, who reviewed the medical evidence and listened to

plaintiff's testimony before offering his opinions.  A.R. 26-36.  Yet,

plaintiff contends the ALJ failed to develop the record because he did

not seek further information from Dr. Bogost.  It cannot be said,

however, that there is any ambiguity in the evidence that would

trigger the ALJ's duty to seek more information from Dr. Bogost.  In

fact, the ALJ specifically found no need for further inquiry.  <u>See</u>

A.R. 13 (Dr. Bogost "has indicated that the [plaintiff's] limitations

are mild in terms of memory and judgment when sober, that she has no

problems in terms of social withdrawal, and that she is simply

apathetic . . . ."). Since the ALJ had not problem interpreting Dr.

Bogost's opinions, <u>Mayes</u>, 276 F.3d at 460, there is no merit to this

1 claim.[15]  For all these reasons, substantial evidence supported the

2 ALJ's determination of plaintiff's RFC.

3

4                                       V

5      At Step Five, the burden shifts to the Commissioner to show the

6 claimant can perform other jobs that exist in the national economy.

7 Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007); Widmark, 454

8 F.3d at 1069.  There are two ways for the Commissioner to meet this

9 burden: "(1) by the testimony of a vocational expert, or (2) by

10 reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R.

11 pt. 404, subpt. P, app. 2."[16]  Tackett v. Apfel, 180 F.3d 1094, 1099

12 (9th Cir. 1999); Widmark, 454 F.3d at 1069.  The Commissioner "must

13 'identify specific jobs existing in substantial numbers in the

14 national economy that [the] claimant can perform despite her

15 identified limitations.'"  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th

16 ───────────────

17      [15]  The plaintiff also claims the ALJ should have left the
record open to allow her to supplement the record.  Jt. Stip. at
18 20:11-12.  Yet, plaintiff was represented at the administrative
hearing by counsel who did not request the record be left open
19 for supplementation.  See A.R. 42-43.  Moreover, plaintiff does
not assert she attempted to reopen the hearing, 20 C.F.R. §§
20 404.944, 416.1444, or supplement the record after the hearing,
and there is nothing in the record itself to suggest that she
21 could not have done so.

22      [16]  The Grids are guidelines setting forth "the types and
23 number of jobs that exist in the national economy for different
kinds of claimants.  Each rule defines a vocational profile and
24 determines whether sufficient work exists in the national
economy.  These rules represent the [Commissioner's]
25 determination, arrived at by taking administrative notice of
relevant information, that a given number of unskilled jobs exist
26 in the national economy that can be performed by persons with
each level of residual functional capacity."  Chavez v. Dep't of
27 Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996)
28 (citations omitted).

1  Cir. 1999) (quoting <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir.
2  1995)).

3

4      Here, a vocational expert, Alan L. Ey, testified at the
5  administrative hearing.  <u>See</u> A.R. 41-43.  Hypothetical questions to a
6  vocational expert must consider all of the claimant's limitations,
7  <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 (9th Cir. 2001), and "[t]he ALJ's
8  depiction of the claimant's disability must be accurate, detailed, and
9  supported by the medical record."  <u>Tackett</u>, 180 F.3d at 1101.  The
10 plaintiff contends the hypothetical question to the vocational expert
11 "fails to set out all of the plaintiff's particular limitations and
12 restrictions" as identified by Drs. Bogost and Rodriguez.  Jt. Stip.
13 at 22:26-23:05.  There is no merit to this claim.

14

15     The ALJ asked vocational expert Mr. Ey the following hypothetical
16 question:

17

18     Let's suppose, Mr. [Ey], someone has a high school level
19     education, not illiterate, limited to where they can only do
20     simple tasks at work involving up to four or five-step
21     instruction but no more than that, and no requirements for
22     excessive speed in their physical activities like you'd have
23     at a rapid assembly line, no responsibility for safety
24     operations, no requirements for hypervigilance, no work
25     around hazardous machinery and she'd be limited to light
26     range of work. . . .

27                         *   *   *

28     Are there any unskilled jobs that could [be] performed?

A.R. 41-42.   In response, the vocational expert identified the jobs of

//

housekeeper (Dictionary of Occupational Titles ("DOT")[17] no. 323.687-014), with 21,000 job positions regionally and 302,000 nationally, and mail clerk (DOT no. 209.687-026), with 4,000 job positions regionally and 79,000 nationally.   A.R. 42.


Since this hypothetical question reflects the limitations found by Dr. Rodriguez and the ALJ's RFC determination of limited light work, which this Court has found was proper, the vocational expert's testimony constitutes substantial evidence to support the ALJ's Step Five determination that plaintiff can perform other work in the national economy and is not disabled.   Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008).


**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.


DATE: November 23, 2009          /S/ ROSALYN M. CHAPMAN
                                 ROSALYN M. CHAPMAN
                                 UNITED STATES MAGISTRATE JUDGE


---

[17]   The DOT is the Commissioner's primary source of reliable vocational information.   Johnson, 60 F.3d at 1434 n.6.

R&R-MDO\08-1135.mdo
11/23/09